## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEWIS G. ADLER, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFFS,[1]<br><br>V.<br><br>WELLS FARGO BANK, N.A.,<br><br>DEFENDANTS. | CIVIL ACTION NO. |

## COMPLAINT

**ROGER C. MATTSON,**
**ATTORNEY AT LAW**
Roger C. Mattson
Attorney ID#: 014361976
Paul DePetris
Attorney ID #: 005821996
26 Newton Ave.
Woodbury, NJ 08096
Tel. #: (856) 848-4050
Email: rogermattson1@yahoo.com
Counsel for plaintiffs

---

[1] For simplicity's sake all references to the parties named to this case shall use plural rather than singular designation, regardless of their actual number.

Plaintiffs, by way of complaint against defendants, say/says:

**PARTIES**

1. Plaintiffs is/are individual persons residing at 215 Douglas Avenue, Haddonfield, New Jersey 08033.

2. Wells Fargo BANK, N.A. is a business with offices located at 420 Montgomery Street, San Francisco, California 94104.

3. Unless otherwise noted below, all allegations set forth below are pled against all defendants named herein.

**ABBREVIATIONS**

4. All allegations contained in the previous paragraphs are repeated as if fully set forth herein.

5. For brevity's sake, hereafter plaintiffs shall use the following abbreviations:

| Original Term | Abbreviation |
|---|---|
| Plaintiffs LEWIS G. ADLER (collectively if there is more than one plaintiff) | Plaintiffs |
| Defendants Wells Fargo BANK, N.A. individually | Defendants |
| Plaintiffs and defendants collectively | The parties |
| The home mortgage account between the parties | The account |
| Plaintiffs' Complaint Filed In This Case | The Complaint |
| The Instant Civil Action | This Case Or The Case |
| The Members Of The Putative Class Identified Below In The Class Action Certification Allegations | The class members or the class |
| The Class Action Fairness Act, 28 U.S.C. § 1332 | CAFA |
| Telephone Consumer Protection Act, 47 U.S.C.A. § 227, et seq. | TCPA |

| Markos v. Wells Fargo Bank, N.A., No. 1:15-cv-01156-LMM filed in the United States District Court For The Northern District of Georgia | The prior case |
| --- | --- |

**BASIS FOR JURISDICTION**

6. All allegations contained in the previous paragraphs are repeated as if fully set forth herein.

7. Pursuant to 28 U.S.C. §§ 1331 & 1337 and 47 U.S.C. §227(b)(3), this Court has jurisdiction of the case.

8. Personal jurisdiction and venue in the District of New Jersey are proper because plaintiffs reside in the District, defendants transact business in the District and a substantial portion of the events giving rise to the cause or causes of action pled in the complaint occurred here, including defendants' unsolicited calls to plaintiffs.

**EXHIBITS REFERENCED IN COMPLAINT**

9. Plaintiffs repeat all of the allegations contained in the previous paragraphs as if fully set forth herein.

10. Hereafter, plaintiffs shall rely upon and refer to the following exhibits attached to the complaint:[2]

---

[2]Where necessary to comply with the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure, R. 1:38-7, et seq. and/or R. 4:5-1, et seq., exhibits may be redacted to omit personal confidential identifying information. Where indicated, exhibits may be but portions of the documents identified.

1) Class Action Complaint In Markos V. Wells Fargo Bank, N.A., No. 1:15-CV-01156-LMM Filed In The United States District Court For The Northern District Of Georgia On 4-14-15.

2) First Amended Class Action Complaint In Markos V. Wells Fargo Bank, N.A., No. 1:15-CV-01156-LMM Filed In The United States District Court For The Northern District Of Georgia On 6-29-16.

3) Order: (1) Conditionally Certifying A Settlement Class, (2) Preliminarily Approving Class Action Settlement, (3) Approving Notice Plan, And (4) Setting Final Approval Hearing In Markos V. Wells Fargo Bank, N.A., No. 1:15-CV-01156-LMM Filed In The United States District Court For The Northern District Of Georgia On 8-15-16.

4) Amended Order: (1) Conditionally Certifying A Settlement Class, (2) Preliminarily Approving Class Action Settlement, (3) Approving Notice Plan, And (4) Setting Final Approval Hearing In Markos V. Wells Fargo Bank, N.A., No. 1:15-CV-01156-LMM Filed In The United States District Court For The Northern District Of Georgia On 9-7-16.

5) Letter Dated 10-7-16 From Lewis G. Adler To Markos Wells Fargo TCPA Settlement Claims Administrator.

11. All references herein to exhibits shall be to those listed above.

**FACTUAL ALLEGATIONS**

12. All allegations contained in the previous paragraphs are repeated as if fully set forth herein.

13. The TCPA was passed into law in 1991.

14. The TCPA regulates and restricts the use of automatic telephone equipment.

15. Congress enacted the TCPA to protect consumers from unwanted telephone solicitations using artificial or prerecorded messages.

16. Congress explicitly found that robocalling to solicit business is an invasion of privacy: "Evidence compiled by Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator or the message, to be a nuisance and an invasion of privacy." Section 2 of Pub. L. 102-24.

17. In regard to such telemarketing, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and the elderly out of bed; they hound us until we want to rip the telephone right out

of the wall." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 F.C.C.R. 17459 at note 90 (2002), quoting 137 Cong. Rec. H10, 341 (Nov. 7, 1991).

18. The TCPA protects consumers from unwanted calls and text messages that are made with autodialers and with prerecorded messages.

19. Specifically, 47 U.S.C. § 227(b) provides: (1) Prohibitions[.] It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

20. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.

21. The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous written disclosure must be provided to the individual. *See* 2012 FCC Order, 27 FCC Rcd. at 1839

("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer — providing permission in writing — to authorize autodialed or prerecorded telemarketing calls....").

22. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 734 (N.D. Ill. 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the text message).

23. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming

calls whether they pay in advance or after the minutes are used. See *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

24. The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." See *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by Dish Network*, LCC, 28 FCC. Rcd. 6574, 6574 (2013)).

25. Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b). *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014) (citing 28 F.C.C. Rcd. at 6590 n. 124).

26. A ratification occurs when the benefits of the purportedly unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement. *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 631 (Fla. 2d DCA 2010).

27. At all times relevant hereto, defendants were a national bank.

28. At all times relevant to this case, defendants knew about the TCPA and defendants' obligations to comply therewith

when making autodialed calls to cellular phones.

29. As shall be seen below, notwithstanding that knowledge and in violation of the TCPA, defendants made or caused do be made autodialed calls to cellular phones.

30. On or about 4-14-15, plaintiffs Steven L. Markos ("Markos"), Tiffany Davis ("Davis") And Gregory Page ("Page"), on behalf of themselves and all others similarly situated filed the complaint in the prior case, alleging that defendants violated the TCPA by initiating non-emergency telephone calls using an automatic telephone dialing system to consumers' cellular telephone numbers without the prior express consent of the subscribers of those cellular telephone numbers.  Exhibit 1.

31. On or about 6-29-16, plaintiffs Markos, Davis And Page, on behalf of themselves and all others similarly situated filed the first amended complaint in the prior case, alleging that defendants violated the TCPA by initiating non-emergency telephone calls using an automatic telephone dialing system to consumers' cellular telephone numbers without the prior express consent of the subscribers of those cellular telephone numbers.  Exhibit 2.

32. On or about 8-5-16 and 9-7-16 respectively, the Court in the prior action entered an order and an amended order conditionally certifying a settlement class, granting

preliminary approval of a class action settlement and
setting a final hearing on said certification and approval.
Exhibits 3-4.

33. By letter dated 10-7-16, plaintiffs notified the Markos
Wells Fargo TCPA Settlement Claims Administrator that
plaintiffs requested to be excluded from the class in the
prior case.  Exhibit 5.

34. On or about 2007, defendants purchased the plaintiffs'
mortgage from Sears Mortgage.

35. Plaintiffs are subscribers for cellular telephone services
for telephone number (856) XXX-XXXX.

36. Defendants made a series of phone calls to plaintiffs' cell
phone when defendants initiated non-emergency telephone
calls using an automatic telephone dialing system to
plaintiffs' cellular telephone number without plaintiffs'
prior express consent.

37. The dates of some of the phone calls are as follows:

    1) April 22, 2015 from (800)678-XXXX

    2) May 1, 2015 from (800)678-XXXX

    3) May 9, 2015 from (800)678-XXXX

    4) May 29, 2015 from a blocked number

    5) June 11, 2015 from a blocked number

    6) June 23, 2015 from (800)678-XXXX

    7) June 25, 2015 from (800)678-XXXX

8) June 26, 2015 from (800)678-XXXX

9) August 11, 2015 from (800)678-XXXX

10)    August 12, 2015 from (800)678-XXXX

11)    August 14, 2015 from (909)xxx-xxxx

12)    October 13, 2015 from (800)678-XXXX

13)    October 15, 2015 from (800)678-XXXX

14)    October 16, 2015 from (800)678-XXXX

15)    October 21, 2015 from (800)678-XXXX

16)    December 23, 2015 from (800)678-XXXX

17)    December 24, 2015 from (800)678-XXXX

18)    January 8, 2016 from (800)678-XXXX

19)    January 14, 2016 from (800)678-XXXX

20)    January 15, 2016 from (800)678-XXXX

21)    January 27, 2016 from (800)678-XXXX

22)    February 11, 2016 from (800)678-XXXX

23)    February 15, 2016 from (800)678-XXXX

24)    February 16, 2016 from (800)678-XXXX

25)    February 19, 2016 from (800)678-XXXX

26)    May 11, 2016 from (800)678-XXXX

27)    May 12, 2016 from (800)678-XXXX

28)    May 17, 2016 from (800)678-XXXX

29)    May 18, 2016 from (800)678-XXXX

30)    June 21, 2016 from (800)678-XXXX

31)    June 21, 2016 from (800)678-XXXX

32)     June 22, 2016 from (800)678-XXXX

33)     June 23, 2016 from (800)678-XXXX

34)     June 28, 2016 from (800)678-XXXX

35)     June 30, 2016 from (800)678-XXXX

36)     July 6, 2016 from (844)213-XXXX

37)     July 7, 2016 from (844)213- XXXX

38)     July 12, 2016 from (844)213- XXXX

39)     July 21, 2016 from (844)213- XXXX

40)     August 11, 2016 from (844)213- XXXX

41)     October 13, 2016 (844)213- XXXX


38. Plaintiffs never gave permission to defendants to call plaintiffs on plaintiffs' cell phone.

39. Nevertheless, defendants repeatedly called plaintiffs on plaintiffs' cell phone when defendants initiated non-emergency telephone calls using an automatic telephone dialing system to plaintiffs' cellular telephone number without plaintiffs' prior express consent.

40. After receiving one such call, plaintiffs made a request to defendants that defendants cease making further phone calls to plaintiffs.

41. However, notwithstanding that request, defendants continued making phone calls to plaintiffs.

42. Defendants made these calls after the following events

occurred in the prior case: (1) the class was preliminarily certified; (2) the settlement was preliminarily approved; (3) final approval was given for the settlement; and final approval was given for the class.

43. Upon information and belief, defendants made these calls after defendants were sued in the case of *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) in which the Eleventh Circuit cited *Osorio v. State Farm Bank, FSB*, 746 F. 3d 1242 (11th Cir. 2014).

44. By virtue of the Eleventh Circuit's decision in *Breslow*, defendants were made aware of the Eleventh Circuit's holding in *Osorio* that defendants must honor verbal requests to cease calling using automated dialers and prerecorded voice messages.

45. Upon information and belief, notwithstanding the settlement in the prior case and the aforesaid holdings, defendants continued calling plaintiffs and other consumers' cellular telephone numbers using a predictive dialer and leaving unattended and prerecorded messages after requests to cease calling.

46. Upon information and belief, notwithstanding previously settling multiple TCPA class actions involving millions of class members who received calls to their cell phones in regard to collection calls (e.g., *Malta v. Wells Fargo*

*Home Mortgage, Inc. et al.*, No. 3:10-cv-01290-BEN-NLS (S.D. Cal.), and *Franklin v. Wells Fargo Bank NA.*, No. 14-cv-2349-MMA-BGS (S.D. Cal.)), defendants continued calling plaintiffs and other consumers' cellular telephone numbers using a predictive dialer and leaving unattended and prerecorded messages after requests to cease calling.

47. These calls to plaintiffs and the class were not initiated by accident or mistake; rather the telephone calls made by defendants were intentionally, willfully, and knowingly initiated.

48. Moreover, defendants knew that defendants did not have the right to make these calls, by virtue of not receiving plaintiffs or the class members' consent to make the calls and having received and ignored plaintiffs or the class members' requests that calls stop and because it settled the prior case and lost the *Breslow* appeal.

49. Nevertheless, defendants, defendants' predecessors in interest and/or vendors made numerous telephone calls to the cellular telephone numbers of plaintiffs and upon information and belief, to others across the United States of America. Exhibits 1-2.

50. Upon information and belief, the telephone calls to plaintiffs and others members of the class and subclass defined below were initiated by defendants using an

automatic telephone dialing system. Exhibits 1-2.

51. Upon information and belief, defendants program telephone numbers into defendants' dialing system(s), which then dials those numbers at a rate to ensure that a customer representative will be available when a consumer answers the telephone. Exhibits 1-2.

52. Upon information and belief, defendants use the same dialing systems and calling policies, practices and procedures to make calls. Exhibits 1-2.

53. Upon information and belief, defendants historically used and has registered with various regulatory agencies a dialing system manufactured by Sun Microsystems. Exhibits 1-2.

54. Upon information and belief, in some of the telephone calls to plaintiffs and the class, defendants left unattended and pre-recorded voicemail messages. Exhibits 1-2.

55. Upon information and belief, defendants made such autodialed or prerecorded voice calls to the cellular telephone numbers of plaintiffs and others without their prior express consent. Exhibits 1-2.

56. In the case of plaintiffs and numerous others, defendants continued to make its autodialed or prerecorded voice calls to their cellular telephone numbers even after receiving notification that it did not have permission to call,

including after direct requests from the consumer that
further calling cease. Exhibits 1-2.

57. Upon information and belief, defendants' dialing system(s)
has the capacity to dial from a list of telephone numbers
without human intervention. Exhibits 1-2.

58. Upon information and belief, defendant's call center(s) and
dialing infrastructure likewise have the capacity to store
a database of telephone numbers and to dial such numbers
either at random or in some sequence. Exhibits 1-2.

59. Upon information and belief, defendants' telephone calls to
the cellular telephone numbers of plaintiffs and the class
were made using equipment with the capacity to dial numbers
predictively. Exhibits 1-2.

60. Plaintiffs and the class were damaged by defendants' calls
alleged herein, as the privacy of plaintiffs and the class
were improperly invaded and plaintiffs and the class were
forced to divert attention away from other activities to
address the incoming calls and voicemail messages. *See,
e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740
(2012) (discussing congressional findings of consumer
"outrage" as to autodialed and prerecorded calls).

61. The TCPA contains no statute of limitations applicable to
claims brought thereunder.

62. Assuming for argument's sake that the federal catchall four

year statute of limitations applies to this case, any statute of limitations is tolled by the class action settlement of the prior case.

## CLASS ACTION CERTIFICATION ALLEGATIONS

63. Plaintiffs repeat all paragraphs set forth above as if set forth herein in full.

64. Plaintiffs bring this action pursuant to Rule 23 on behalf of plaintiffs and on behalf of the class members, with the class being composed of a class of all other New Jersey citizens similarly situated to plaintiffs and suffering similar harms.

65. **Plaintiffs propose a class as follows: a nationwide class of citizens that were users or subscribers to a wireless or cellular service within the United States and who used or subscribed to a phone number to which defendants made or initiated one or more calls during the class period using any automated dialing technology, according to defendants' available records and who received phone calls from defendants from March 1, 2016 to the time of class certification but excluding claims related to any calls released as part of prior settlements, including but not limited to the following prior cases:  Markos v Wells Fargo Bank NA, 1:15-cv-01156-LMM (N.D. Ga.); *Malta v. Wells Fargo Home Mortgage, Inc.*, 3:10-cv-1290-BEN-NLS (S.D. Cal.); and**

*Franklin v. Wells Fargo Bank, N.A.*, 14-cv-2349-MMA (BGS) (S.D. Cal.).

66. Defendants are in exclusive possession, custody and control of the list of persons who were class members in the prior case and any other cases.

67. While there may be other cases pending against defendants, upon information and belief, the proposed class members' claims in this matter don't overlap with those other pending cases.

68. It isn't the intent to have overlapping classes and any overlap will be ameliorated through amendment if facts show that they do overlap.

69. Defendants' actions are not isolated.

70. Defendants' actions have affected similarly situated individuals throughout the State of New Jersey.

71. Defendants acted on grounds generally applicable to the class members, thereby justifying relief against defendants for the class members as whole.

72. Plaintiffs are members of the class that they seek to represent.

73. The class is believed to number hundreds if not thousands of persons and their joinder is impracticable, except by via a class action. This allegation is likely to have evidentiary support after a reasonable opportunity for

further investigation or discovery because it is based on the following information: 1) plaintiffs themselves received unauthorized calls to plaintiffs' cellular telephones from defendants or defendants' agents, indicating that defendants failed to scrub to remove cellular telephone numbers; 2) the very purpose of automated dialers is to call numerous persons in a short amount of time; and 3) defendants' sheer size and national scope.

74. The disposition of the claims of the class in a class action will benefit both the parties and the Court.

75. There are questions of law and/or fact common to the class predominating over any question affecting only individual class members as to whether defendants are liable to plaintiffs for violation of applicable law. For instance, are defendants liable for the class action claims pled in the complaint?

76. Class certification is also appropriate because defendants acted on grounds generally applicable to the class, making appropriate equitable injunctive relief with respect to plaintiffs and the class members.

77. Specifically, plaintiffs seek injunctive relief via a court judgment or order requiring an end to the unlawful

practices and/or the issuance of a corrective notice to the class members.

78. Plaintiffs' claims are typical of the claims of the class insofar as named class representatives and the members of the class were similarly exposed to the statutory harms alleged herein and were similarly injured and/or face similar risks therefrom.

79. The proposed class representatives state a claim upon which relief can be granted that is typical of the claims of absent class members.  If brought and prosecuted individually, the claims of each class member would necessarily require proof of the same material and substantive facts, rely upon the same remedial theories, and seek the same relief.

80. Plaintiffs will fairly and adequately represent the interests of the class insofar that the plaintiffs' claims are typical of those of the class members.

81. Plaintiffs are committed to the vigorous representation of the class members.

82. Plaintiffs retained counsel experienced and skilled in consumer law and class action litigation.

83. Counsel agreed to advance the costs of the litigation contingent upon the outcome.

84. Plaintiffs have no conflict of interest in the maintenance of this class action.

85. If the matter is maintained as a class action, it shall provide for a fair and efficient adjudication of this dispute.

86. The claims and remedial theories pursued by the named class representative are sufficiently aligned with the interests of absent class members to ensure that the individual claims of the class will be prosecuted with diligence and care by the individual plaintiffs as class representatives.

87. Contrawise, especially in view of the small dollar amounts in controversy relative to the individual plaintiffs' claims, it would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action.

88. Further, the maintenance of separate actions in lieu of the instant proposed class action would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications.

89. Contrawise, a single class action such as the instant proposed class action can determine the rights of all class members while economizing judicial resources.

90. Moreover, as plaintiffs invoked consumer protection statutes and have pled a prima facie case for the violation of same, the policy goals behind those consumer protection statutes provide further reason for permitting class action certification of the instant action.

91. The benefits of adjudicating this case via a class action far outweigh any difficulties in management of the case as a class action.

92. Class action treatment of this case is a superior method for the fair and efficient adjudication of this dispute because:

- individual claims by the class members are impractical as the costs of pursuit far exceed what any one plaintiff or class member has at stake;

- as a result, there has been no other litigation over the controversies herein;

- individual members of the class have no interest in prosecuting and controlling separate actions; and

- the proposed class action is manageable.

- the proposed class is readily ascertainable.

93. Certification of the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the defendants acted on grounds that apply generally to the

class, so that final injunctive relief is appropriate respecting the class as a whole.

94. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that: (a) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member. (b) A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment will permit a large number of similarly situated persons to prosecute their common claims relating to Defendant's autodialed calls to their cellular telephones in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual lawsuits would entail. Absent a class action, many members of the class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by defendants' illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise.

95. Plaintiffs request certification of a hybrid class pursuant to Fed. R. Civ. P. 23(b)(2) and (3) for monetary damages and injunctive relief.

**COUNT 1**

**TCPA VIOLATION**

96. All allegations contained in the previous paragraphs are repeated as if fully set forth herein.

97. This count is pled on behalf of plaintiffs individually and the class.

98. Defendants' acts against plaintiffs and the class constitute TCPA violations.

99. Defendants' violations of the TCPA include, but are not limited to, the following: making and/or initiating telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 CFR § 64.1200(a)(1)(iii).

100. As a result of defendants' misconduct, plaintiffs and the members of the class are entitled to an award of actual damages or $500.00, whichever is greater, for each such violation and an injunction prohibiting future conduct in violation of the TCPA. 47 U.S.C. § 227(b)(3)(B).

101. Because defendants' TCPA violations were committed willfully and knowingly, plaintiffs and the class also seek treble damages pursuant to 47 U.S.C. § 227(b)(3).

102. Plaintiffs also seek injunctive relief pursuant to 47

U.S.C. § 227(b)(3)(A) preventing future TCPA violations.

103. Plaintiffs request, on behalf of themselves and the class, that defendant be enjoined from committing future TCPA violations.

## PRAYER FOR RELIEF COMMON TO ALL COUNTS

104. All allegations contained in the previous paragraphs are repeated as if fully set forth herein.

WHEREFORE, judgment is demanded for an award of damages and all other applicable relief pursuant to all applicable codes, statutes and/or common law pled herein (including any applicable enhanced/statutory damages/penalties attorney's fees, interest and costs of suit) and any other legal and equitable relief that the Court deems appropriate, including but not necessarily limited to a declaratory judgment and injunctive relief to end the aforesaid illegal misconduct.

## CERTIFICATION OF VERACITY OF PLEADING

ROGER C.MATTSON hereby certifies to the Court as follows:

1. I am an attorney at law licensed to practice law in the State of New Jersey.

2. I am co-counsel for plaintiffs.

3. I make the statements contained in this certification from personal knowledge.

4. The basis of my personal knowledge is my personal work on this file.

5. I make this certification in support of this pleading.

6. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have  evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable   opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true and correct.

EXECUTED ON:  March 18, 2019

Respectfully submitted,

/s/ ROGER C.MATTSON

**ROGER C.MATTSON**
26 Newton Ave.
Woodbury, NJ 08096
Tel. #:  (856) 848-4050
Fax #:  (856) 848-9504
Co-counsel for plaintiff(s)
**Email:**  rogermattson1@yahoo.com

**JURY DEMAND**

Relative to all issues pled in the instant action that are so triable, the parties submitting this pleading for filing hereby demand a trial by jury.

**DESIGNATION OF TRIAL COUNSEL**

**ROGER C.MATTSON, ESQ.** is designated as trial counsel in this matter for the parties submitting this pleading for filing.

**LOCAL RULE 11.2 CERTIFICATION**

ROGER C.MATTSON hereby certifies to the Court as follows:

1. I am an attorney at law licensed to practice law in the State of New Jersey.

2. I am co-counsel for plaintiffs.

3. I make the statements contained in this certification from personal knowledge.

4. The basis of my personal knowledge is my personal work on this file.

5. I make this certification in support of this pleading.

6. The matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, and, if so, the certification or other authorized document shall identify each such action, arbitration or administrative proceeding, and all parties thereto.

CERTIFICATION MADE PURSUANT TO 28 U.S.C. §1746

I certify, under penalty of perjury that the foregoing is true
and correct.

Respectfully submitted,

EXECUTED ON:  March 18, 2019

/s/ ROGER C.MATTSON

**ROGER C.MATTSON**
26 Newton Ave.
Woodbury, NJ 08096
Tel. #:  (856) 848-4050
Fax #:  (856) 848-9504
Co-counsel for plaintiff(s)
**Email:**  rogermattson1@yahoo.com

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEVEN L. MARKOS,          :
on behalf of himself and all    :
others similarly situated,      :
                              :
      Plaintiff,           :
                              :   Civil Action File No.
v.                           :
                              :
WELLS FARGO BANK, N.A.,    :   **Jury Trial Demanded**
                              :
      Defendant.        :
_____ :

## CLASS ACTION COMPLAINT

1.     Plaintiff STEVEN L. MARKOS ("MARKOS"), on behalf of himself and all others similarly situated, alleges defendant Wells Fargo Bank, N.A. ("WELLS FARGO") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), by initiating non-emergency telephone calls using an automatic telephone dialing system to cellular telephone numbers without the prior express consent of the subscribers of those cellular telephone numbers.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1337 and 47 U.S.C. § 227(b)(3).

3.    This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to

hear Plaintiff's state law claims as they are so related to Plaintiff's TCPA

claim that they form part of the same case or controversy.

4.    Venue in this District is proper because the Plaintiff resides here and the

Defendants transact business here.

## PARTIES

5.    Plaintiff is a natural person who resides in the Northern District of Georgia.

6.    Plaintiff is a subscriber for his cellular telephone services for telephone

number (404) 693-0147.

7.    Defendant WELLS FARGO BANK, N.A. [hereinafter "WELLS FARGO"]

is a national banking association which boasts assets of $1.7 trillion dollars

and a stock market value of $283 Billion dollars as of the close of 2014.

8.    WELLS FARGO is headquartered and has its corporate offices at 420

Montgomery Street, San Francisco, CA  94104.

9.    WELLS FARGO has maintained a call center in Iowa and many of the calls

to class members were generated from this location.

10.   WELLS FARGO's website as of April 9, 2015 states that it is "the 8th

Biggest Public Company in the World ....with more than 8,700 locations and

over 70 million customers."

2

https://www08.wellsfargomedia.com/downloads/pdf/about/wellsfargotoday.pdf

11. WELLS FARGO has numerous banking branches in the metropolitan Atlanta area.

12. Other defendants may be discovered in the course of litigation, and Plaintiff respectfully prays that the Court will permit the addition of later discovered parties upon motion.

13. WELLS FARGO may be served by personal service on its registered agent at its registered office in Georgia, to wit: Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, GA  30092.

## FACTUAL ALLEGATIONS

14. In the four year period preceding the filing of this action, WELLS FARGO, its predecessors in interest and/or vendors have made numerous telephone calls to Plaintiff's cellular telephone number, (404) 693-0147, in an attempt to collect a secured debt on a home equity line of credit.

15. The telephone calls were made using a predictive dialer.

16. In some of the telephone calls, defendant left an unattended and pre-recorded voice mail message.

17.   In other telephone calls, WELLS FARGO left messages from "live" collection agents which had a pause at the beginning of the message before the WELLS FARGO representative began speaking.

18.   A pause at the beginning of a message or call is characteristic of predictive dialer technology where the dialer connects a call to a consumer and then connects an agent to the call.

19.   WELLS FARGO has historically used and has registered with various regulatory agencies a dialing system manufactured by Sun Microsystems.

20.   WELLS FARGO also uses software on its dialing system(s) which has the capacity to predictively dial in its telephone calls to telephone number (404) 693-0147.

21.   WELLS FARGO's call center(s) and dialing infrastructure have the capacity to store a database of telephone numbers.

22.   WELLS FARGO's call center(s) and dialing infrastructure have the capacity to dial telephone numbers from a stored list either at random or in some sequence.

23.   WELLS FARGO programs telephone numbers into its dialing system(s) which then dials those numbers at a rate to ensure that a customer representative will be available when a consumer answers the telephone.

4

24.   WELLS FARGO's dialing system(s) has the capacity to dial from a list of telephone numbers without human intervention.

25.   The telephone calls to Plaintiff were initiated by Defendant WELLS FARGO using an automatic telephone dialing system.

26.   Plaintiff did not initiate the loan with WELLS FARGO, but rather initiated it with Wachovia Bank, N.A. and never provided express permission or consent for either Wachovia Bank, N.A. or WELLS FARGO to make the telephone calls to his cellular telephone number.

27.   Plaintiff was specifically requested to authorize "Automated Dialing System Calls" by a Wells Fargo employee, to which he unequivocally declined to give such authorization.

28.   Plaintiff has orally advised more than one WELLS FARGO employee that he did not want WELLS FARGO to contact him on his cellular telephone number after expressly declining to consent to autodialed calls.

29.   WELLS FARGO employees specifically advised that they would not honor a verbal request to cease calling Plaintiff's cellular telephone number and that they would continue to call his cellular telephone number.

30.   WELLS FARGO employees said it was their policy only to honor written cease communication requests that were made to their Iowa corporate office.

5

31.    Upon information and belief, WELLS FARGO's practice was to make computerized notations regarding oral requests to cease and desist, including but not limited to (a) hand-typed notes and (b) placement of a brief (e.g. three-day) "hold" on calls, for alleged purposes of allowing the consumer to request that calls cease and desist in writing. However, if Wells Fargo did not receive a written cease and desist, then it would automatically load the cellular telephone number back into its autodialer. There were likely other computerized methodologies for keeping track of do not call requests as well.

32.    WELLS FARGO continued calling Plaintiff after one or more clear requests not to call his cellular telephone number by leaving unattended and pre-recorded messages.

33.    WELLS FARGO continued calling Plaintiff after one or more clear requests not to call his cellular telephone number by leaving live messages that utilized automated and predictive dialing technology.

34.    Defendant knew about the TCPA before making the calls to plaintiff and the class, but made these autodialed calls to cellular phones in spite of such knowledge.

35. WELLS FARGO was a defendant in the case of *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) in which the Eleventh Circuit cited *Osorio v. State Farm Bank, FSB*, 746 F. 3d 1242 (11th Cir. 2014).

36. By virtue of the Eleventh Circuit's decision in *Breslow*, WELLS FARGO was made aware of the Eleventh Circuit's holding in *Osorio* that it must honor verbal requests to cease calling using automated dialers and prerecorded voice messages.

37. WELLS FARGO has continued calling Plaintiff and other consumers' cellular telephone numbers using a predictive dialer and leaving unattended and prerecorded messages after requests to cease calling despite its knowledge of the Eleventh Circuit's holding in *Osorio*.

38. WELLS FARGO had previously settled multiple TCPA class actions involving millions of class members who received TCPA violative calls to their cell phones in regard to collection calls on primary home mortgages in the case of *Alberto Malta, et al. v. The Federal Loan Mortgage Corporation A/K/A Freddie Mac; and Wells Fargo Home Mortgage, Inc.*, Case No. 3:10-cv-01290-BEN-NLS, USDC SDCA.

39. The telephone calls made by WELLS FARGO were intentionally, willfully and knowingly initiated. Moreover, WELLS FARGO knew that it did not

have plaintiff or the subclass members' consent to make these calls, by

virtue of having received and ignored requests that calls stop, and because it

lost the *Breslow* appeal, but made the calls anyway.

40. The telephone calls were not initiated by accident or mistake.


## **CLASS ACTION ALLEGATION**

41. Plaintiff is a member of and seeks to bring this action on behalf of himself

and on behalf of all other similarly situated individuals (hereinafter the

"Class" as well as "Subclass One").

42. This action is brought by Plaintiff on behalf of the Class of individuals

defined as (i) all persons to whom a call was initiated by either WELLS

FARGO or some vendor on its behalf (ii) to such person's cellular telephone

number (iii) using an unattended telephone message and/or the same or

similar telephone system(s) WELLS FARGO, or any person on its behalf,

used to call (404) 693-0147, (iv) in the four year period preceding the filing

of this action (v) and where Wells Fargo did not have permission to make

the call.

43.   Plaintiff also seeks to represent, and is a member of, Subclass One, consisting of all persons within the Class, who Wells Fargo called after it had received notification that it did not have permission to call.

44.   Excluded from the class are claims related to any calls released as part of prior settlements, including but not limited to *Malta v. Wells Fargo Home Mortgage, Inc.*, 3:10-cv-1290-BEN-NLS (S.D.Cal.), or *Franklin v. Wells Fargo Bank, N.A.*, 14-cv-2349-MMA (BGS) (S.D.Cal.). Defendant is in exclusive possession, custody and control of the list of persons who were class members in those, and any other, cases. And while there are other cases pending against Wells Fargo, for example, *McLean v. CBV Collection Services, LTD* et al, 1:14-cv-7789 (N.D.Ill.) and *Luster v. Wells Fargo Dealer Services, Inc.*, 1:15-cv-01058-MHC (N.D. Ga.), counsel does not believe the proposed class members' claims in this matter overlaps with those cases. It is not Counsel's intent to have overlapping classes, and any overlap will be ameliorated through amendment if facts show that they do overlap.

45.   The exact size of the class is information within the exclusive knowledge of the defendants.

46.   The class and subclass are so numerous that joinder of all members is impractical.

47.   The allegation of the previous paragraph is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.  This allegation is based upon the following information: 1) Plaintiff himself received such calls to his cellular telephone from multiple collection agents of WELLS FARGO indicating Defendant did not scrub to remove cellular telephone numbers; 2) the very purpose of automated dialers is to call numerous persons in a short amount of time; and 3) the sheer size and national scope of WELLS FARGO.

48.   There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal issues are:

   a.   Whether WELLS FARGO's dialing system constitutes an automatic telephone dialing system under the TCPA and/or the FCC's rules;

   b.   Whether WELLS FARGO's unattended messages used an artificial or prerecorded voice under the TCPA and/or the FCC's rules; and

10

c.  Whether the telephone calls were made knowingly or willfully.

49.    The claims of the Plaintiff are typical of those of the class members.  All are based on the same facts and legal theories.

50.    Plaintiff will fairly and adequately protect the interests of the class.  He has retained counsel experienced in handling TCPA robocall actions and class actions.  Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

51.    Certification of the class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendants have acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

52.    Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

a.    The questions of law or fact common to the members of the class predominate over any questions affecting an individual member

b.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment will permit a large number of similarly situated persons to prosecute their common claims relating to Defendant's autodialed calls to their

11

cellular telephones in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual lawsuits would entail. Absent a class action, many members of the class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by Defendant's illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise.

53. Plaintiff requests certification of a hybrid class pursuant to Fed. R. Civ. P. 23(b)(2) and (3) for monetary damages and injunctive relief.

## CAUSES OF ACTION

## COUNT ONE: TELEPHONE CONSUMER PROTECTION ACT

54. The acts of Defendants constitute violations of the Telephone Consumer Protection Act.

55. Defendants' violations of the TCPA include, but are not limited to, the following:

Making and/or initiating telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone

number assigned to a cellular telephone service, in violation of 47

U.S.C. § 227(b)(1)(A)(iii) and 47 CFR §  64.1200(a)(1)(iii).

56. As a result of Defendants' actions, Plaintiff and the members of the class are

entitled to an award of actual damages or $500.00, whichever is greater, for

each such violation and an injunction prohibiting future conduct in violation

of the TCPA.

57. Defendants' violations were committed willfully and knowingly.

58. Plaintiff, on behalf of himself and the class, requests the court treble

damages pursuant to 47 U.S.C. § 227(b)(3).

59. Plaintiff requests, on behalf of himself and the class, that Defendants be

enjoined from future TCPA violations.


WHEREFORE, Plaintiff requests that the Court enter judgment in favor of

himself and the class he seeks to represent against Defendants, as follows:

A.    Certification of this matter to proceed as a class action;

B.    Damages pursuant to 47 U.S.C. § 227(b)(3)(B);

C.    Treble damages pursuant to 47 U.S.C. § 227(b)(3);

D.    Injunctive relief 47 U.S.C. § 227(b)(3)(A) preventing future

conduct by the defendants in violation of the TCPA;

E.     Costs of this Action pursuant to Fed. R. Civ. P. 54; and

F.     Such further and additional relief as the court deems just and

proper.

Plaintiff herein demands a trial by jury on all issues so triable.

Respectfully submitted,

SKAAR & FEAGLE, LLP

by:     /s/ James M. Feagle
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street
Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA  30189
770 / 427-5600
404 / 601-1855 fax

14

**BURKE LAW OFFICES, LLC**

    Alexander H. Burke
    *Application Pro Hac Vice forthcoming*
    155 N. Michigan Ave., Suite 9020
    Chicago, IL 60601
    (312) 729-5288
    (312) 729-5289 (fax)
    ABurke@BurkeLawLLC.com
    www.BurkeLawLLC.com

ATTORNEYS FOR PLAINTIFF

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| STEVEN L. MARKOS, TIFFANY DAVIS, and GREGORY PAGE, on behalf of themselves and all others similarly situated, | : : : : | |
| | : | Civil Action File No. |
| Plaintiffs, | : | 1:15-cv-01156-LMM |
| | : | |
| v. | : | **Jury Trial Demanded** |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| | : | |
| Defendant. | : | |
| ———————————————— | : | |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

1.  Plaintiffs STEVEN L. MARKOS ("MARKOS"), TIFFANY DAVIS

("DAVIS"), and GREGORY PAGE ("PAGE"), on behalf of themselves and

all others similarly situated, allege that defendant Wells Fargo Bank, N.A.

("WELLS FARGO") violated the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, by initiating non-emergency telephone calls

using an automatic telephone dialing system to cellular telephone numbers

without the prior express consent of the subscribers of those cellular

telephone numbers.

1

## JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1337 and 47 U.S.C. § 227(b)(3).

3.    Personal jurisdiction and venue in this District are proper because Plaintiffs MARKOS and DAVIS reside here, the Defendant transacts business here, and a substantial portion of the events giving rise to Plaintiffs' cause of action occurred here, including Defendant's calls to MARKOS and DAVIS.

## PARTIES

4.    Plaintiff MARKOS is a natural person who resides in the Northern District of Georgia. Plaintiff is a subscriber for his cellular telephone services for telephone number (404) ___-____.

5.    Plaintiff DAVIS is a natural person who resides in the Northern District of Georgia. Plaintiff is a subscriber for her cellular telephone services for telephone number (770) ___-____.

6.    Plaintiff PAGE is a natural person who resides in the Northern District of Illinois.

7.    Defendant Wells Fargo Bank, N.A. [hereinafter "WELLS FARGO"] is a national banking association which boasts assets of $1.7 trillion dollars and a stock market value of $283 Billion dollars as of the close of 2014.

8.    WELLS FARGO is headquartered and has its corporate offices at 420
      Montgomery Street, San Francisco, CA 94104.

9.    WELLS FARGO has maintained a call center in Iowa and many of the calls
      to class members were generated from this location.

10.   WELLS FARGO's website as of April 9, 2015 states that it is "the 8th
      Biggest Public Company in the World ....with more than 8,700 locations and
      over 70 million customers."
      https://www08.wellsfargomedia.com/downloads/pdf/about/wellsfargotoday.
      pdf

11.   WELLS FARGO has numerous banking branches in the metropolitan
      Atlanta area.

12.   WELLS FARGO may be served by personal service on its registered agent
      in Georgia: Corporation Service Company, 40 Technology Parkway South,
      Suite 300, Norcross, GA  30092.

## **FACTUAL ALLEGATIONS**

13.   In the four year period preceding the filing of this action, WELLS FARGO,
      its predecessors in interest and/or vendors have made numerous telephone
      calls to the cellular telephone numbers of Plaintiffs and others across the

country for the purpose of collecting on two types of mortgage loans: Residential Mortgage Loans and Home Equity Loans.

14. Home Equity Loans are agreements to extend credit using a residential property as collateral, which loan is secured by a lien that is subordinate to a first priority lien arising out of a Residential Mortgage Loan.

15. Both Residential Mortgage Loans and Home Equity Loans include loans made by WELLS FARGO and loans made by a different lender and then subsequently assigned to WELLS FARGO.

16. The telephone calls to Plaintiffs and others members of the class and subclass defined below were initiated by Defendant WELLS FARGO using an automatic telephone dialing system.

17. WELLS FARGO's dialing system(s) has the capacity to dial from a list of telephone numbers without human intervention.

18. Defendant's call center(s) and dialing infrastructure likewise have the capacity to store a database of telephone numbers, and to dial such numbers either at random or in some sequence.

19. WELLS FARGO's telephone calls to the cellular telephone numbers of Plaintiffs and the class were made using equipment with the capacity to dial numbers predictively.

4

20.   Defendant programs telephone numbers into its dialing system(s), which then dials those numbers at a rate to ensure that a customer representative will be available when a consumer answers the telephone.

21.   WELLS FARGO uses the same dialing systems and calling policies, practices and procedures to make calls, regardless of what line of business is being collected.

22.   WELLS FARGO has historically used and has registered with various regulatory agencies a dialing system manufactured by Sun Microsystems.

23.   In some of the telephone calls to Plaintiffs and the class, Defendant left an unattended and pre-recorded voicemail message.

24.   WELLS FARGO made such autodialed or prerecorded voice calls to the cellular telephone numbers of Plaintiffs and others without their prior express consent.

25.   In fact, in the case of Plaintiffs and numerous others, WELLS FARGO continued to make its autodialed or prerecorded voice calls to their cellular telephone numbers even after receiving notification that it did not have permission to call, including after direct requests from the consumer that further calling cease.

5

26.   WELLS FARGO's policy is to honor only written cease and desist communication requests made to its Iowa corporate office.

27.   Upon information and belief, WELLS FARGO's practice has been to make computerized notations regarding oral requests to cease and desist, including but not limited to (a) hand-typed notes and (b) placement of a brief (e.g. three-day) "hold" on calls, for alleged purposes of allowing the consumer to request that calls cease and desist in writing. However, if Wells Fargo did not receive a written cease and desist, then it would automatically load the cellular telephone number back into its autodialer. There were likely other computerized methodologies for keeping track of do not call requests as well.

28.   Defendant knew about the TCPA before making the calls to Plaintiff and the class, but made these autodialed calls to cellular phones in spite of such knowledge.

29.   WELLS FARGO was a defendant in the case of *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) in which the Eleventh Circuit cited *Osorio v. State Farm Bank, FSB*, 746 F. 3d 1242 (11th Cir. 2014).

30.   By virtue of the Eleventh Circuit's decision in *Breslow*, WELLS FARGO was made aware of the Eleventh Circuit's holding in *Osorio* that it must

6

honor verbal requests to cease calling using automated dialers and prerecorded voice messages.

31. WELLS FARGO continued calling Plaintiffs and other consumers' cellular telephone numbers using a predictive dialer and leaving unattended and prerecorded messages after requests to cease calling, despite its knowledge of the Eleventh Circuit's holding in *Osorio*.

32. WELLS FARGO has previously settled multiple TCPA class actions, involving millions of class members who received calls to their cell phones in regard to collection calls. *Malta v. Wells Fargo Home Mortgage, Inc. et al.*, No. 3:10-cv-01290-BEN-NLS (S.D. Cal.), and *Franklin v. Wells Fargo Bank NA.*, No. 14-cv-2349-MMA-BGS (S.D. Cal.). Notwithstanding such settlements, WELLS FARGO has continued making such calls without consent.

33. WELLS FARGO's calls to Plaintiffs and the class were not initiated by accident or mistake; rather the telephone calls made by WELLS FARGO were intentionally, willfully, and knowingly initiated. Moreover, WELLS FARGO knew that it did not have Plaintiffs or the subclass members' consent to make these calls, by virtue of having received and ignored

requests that calls stop, and because it lost the *Breslow* appeal, but made the calls anyway.

34. Plaintiffs and the class and subclass have been damaged by WELLS FARGO's calls alleged herein. Their privacy was improperly invaded, and they were forced to divert attention away from other activities to address the incoming calls and voicemail messages. *See, e.g., Mims v. Arrow Fin. Servs., Inc.*, 132 S. Ct. 740 (2012) (discussing congressional findings of consumer "outrage" as to autodialed and prerecorded calls).

### Facts Relating to Plaintiff MARKOS

35. In the four year period preceding the filing of this action, WELLS FARGO, its predecessors in interest and/or vendors have made numerous telephone calls to Plaintiff MARKOS' cellular telephone number, (404) ___-____, in an attempt to collect a secured debt on a Home Equity Loan.

36. The telephone calls to Plaintiff's cellular telephone number were initiated by Defendant WELLS FARGO using an automatic telephone dialing system; specifically, a predictive dialer.

37. In some of the telephone calls to Plaintiff's cell phone, Defendant left an unattended and pre-recorded voicemail message.

8

38.   In other telephone calls, WELLS FARGO left messages from "live" collection agents, which had a pause at the beginning of the message before the WELLS FARGO representative began speaking.

39.   A pause at the beginning of a message or call is characteristic of predictive dialer technology, where the dialer connects a call to a consumer and then connects an agent to the call.

40.   WELLS FARGO did not have the prior express consent of the Plaintiff to make the telephone calls to his cellular telephone number.

41.   Plaintiff MARKOS did not initiate the loan with WELLS FARGO, but rather initiated it with Wachovia Bank, N.A. and never provided express permission or consent for either Wachovia Bank, N.A. or WELLS FARGO to make the telephone calls to his cellular telephone number.

42.   Plaintiff was specifically requested to authorize "Automated Dialing System Calls" by a Wells Fargo employee, to which he unequivocally declined to give such authorization.

43.   Plaintiff has orally advised more than one WELLS FARGO employee that he did not want WELLS FARGO to contact him on his cellular telephone number after expressly declining to consent to autodialed calls.

44.   WELLS FARGO employees specifically advised Plaintiff that they would not honor a verbal request to cease calling his cellular telephone number and that they would continue to call his cellular telephone number.

45.   WELLS FARGO employees said it was their policy only to honor written cease communication requests that were made to their Iowa corporate office.

46.   WELLS FARGO continued calling Plaintiff after one or more clear requests not to call his cellular telephone number by leaving unattended and pre-recorded messages.

47.   WELLS FARGO continued calling Plaintiff after one or more clear requests not to call his cellular telephone number by leaving live messages that utilized automated and predictive dialing technology.

48.   The telephone calls to Plaintiff MARKOS were not initiated by accident or mistake.

49.   The telephone calls were annoying to Plaintiff, invaded Plaintiff's privacy interests, and temporarily blocked use of his cellular telephone line for other potential callers.

### Facts Relating to Plaintiff DAVIS

50.   In the four year period preceding the filing of this action, WELLS FARGO, its predecessors in interest and/or vendors have made numerous telephone

10

calls to Plaintiff DAVIS' cellular telephone number, (770) ___-____, in an attempt to collect a Residential Mortgage Loan.

51. Plaintiff's mortgage payment is due at the beginning of each month; however, she has a grace period in which to make her payment without penalty.

52. Every month, Plaintiff pays her WELLS FARGO mortgage payment within the grace period.

53. During the grace period, WELLS FARGO barrages Plaintiff's cellular telephone number with annoying and unwanted robocalls until her payment is received.

54. The telephone calls to Plaintiff were initiated by Defendant WELLS FARGO using an automatic telephone dialing system; specifically, a predictive dialer.

55. In some of the telephone calls, Defendant left an unattended and prerecorded voicemail message.

56. In other telephone calls, WELLS FARGO left messages from "live" collection agents which had a pause at the beginning of the message before the WELLS FARGO representative began speaking—characteristic of

predictive dialer technology, where the dialer connects a call to a consumer and then connects an agent to the call.

57. WELLS FARGO did not have the prior express consent of the Plaintiff to make the telephone calls to her cellular telephone number.

58. Plaintiff has orally advised more than one WELLS FARGO employee that she did not want WELLS FARGO to contact her on her cellular telephone, expressly declining to consent to autodialed calls.

59. For instance, Plaintiff informed WELLS FARGO on May 7, 2015 in a telephone call that she did not want to receive calls from WELLS FARGO, and WELLS FARGO has continued to call.

60. WELLS FARGO did not honor verbal requests to cease calling Plaintiff's cellular telephone number; it continued to call her cellular telephone number after such requests.

61. WELLS FARGO continued calling Plaintiff after one or more clear requests not to call her cellular telephone number by leaving unattended and prerecorded messages.

62. WELLS FARGO continued calling Plaintiff after one or more clear requests not to call her cellular telephone number by leaving live messages that utilized automated and predictive dialing technology.

12

63.   The telephone calls were not initiated by accident or mistake.

64.   The telephone calls were annoying to Plaintiff, invaded Plaintiff's privacy

interests, and temporarily blocked use of her cellular telephone line for other

potential callers.

### Facts Relating to Plaintiff PAGE

65.   Plaintiff PAGE has a mortgage which is serviced by Wells Fargo Home

Mortgage, a division of Defendant WELLS FARGO.

66.   In or around May 2015, Plaintiff began to receive calls on his cellular

telephone from Defendant regarding an allegedly late or missed payment for

his Residential Mortgage Loan.

67.   In fact, Plaintiff had pre-paid his loan a month ahead of time; however

Defendant misapplied the funds from his payment and did not properly

notate his account.

68.   During the second of these communications, Plaintiff notified Defendant

that his account was current and requested that Defendant not contact his

cellular telephone number.

69.   Despite Plaintiff's notice, Defendant continued to telephone Plaintiff on his

cellular telephone number in an attempt to collect an allegedly delinquent

mortgage payment.

70.     Defendant placed at least eleven telephone calls to Plaintiff's cellular telephone number after Plaintiff notified Defendant that he did not owe a delinquent payment and requested that the calls to his cellular phone cease.

71.     The above referenced calls were all made using an automated telephone dialing system.

72.     Many of the above referenced telephone calls that Defendant placed to Plaintiff's cellular telephone number were placed using a prerecorded or artificial voice message.

73.     Defendant did not have consent to call Plaintiff on his cellular telephone number because Plaintiff had revoked consent to receive such calls.

74.     The telephone calls were not initiated by accident or mistake.

75.     The telephone calls were annoying to Plaintiff, invaded Plaintiff's privacy interests, and temporarily blocked use of his cellular telephone line for other potential callers.

## **CLASS ACTION ALLEGATION**

76.     Plaintiffs are members of and seek to bring this action on behalf of themselves and a class defined as all users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which Wells Fargo made or initiated one or more calls during the

class period using any automated dialing technology, according to Wells Fargo's available records, and who are within Subclass One and/or Two.

77. Subclass One consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a call or calls in connection with a Residential Mortgage Loan. The class period applicable to Subclass One is November 17, 2011 to February 29, 2016. DAVIS and PAGE are members of Subclass One.

78. Subclass Two consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a call or calls in connection with a Home Equity Loan. The class period applicable to Subclass Two is April 14, 2011 to February 29, 2016. MARKOS is a member of Subclass Two.

79. Excluded from the class are claims related to any calls released as part of prior settlements, including but not limited to *Malta v. Wells Fargo Home Mortgage, Inc.*, 3:10-cv-1290-BEN-NLS (S.D. Cal.), or *Franklin v. Wells Fargo Bank, N.A.*, 14-cv-2349-MMA (BGS) (S.D. Cal.). Defendant is in exclusive possession, custody and control of the list of persons who were class members in those, and any other, cases. And while there are other cases pending against Wells Fargo, for example, *McLean v. CBV Collection*

*Services, LTD* et al, 1:14-cv-7789 (N.D. Ill.) and *Luster v. Wells Fargo*

*Dealer Services, Inc.*, 1:15-cv-01058-MHC (N.D. Ga.), counsel does not

believe the proposed class members' claims in this matter overlap with those

cases. It is not counsel's intent to have overlapping classes, and any overlap

will be ameliorated through amendment if facts show that they do overlap.

80.    The exact size of the class is information within the exclusive knowledge of
the Defendant.

81.    The class and subclass are so numerous that joinder of all members is
impractical.

82.    The allegation of the previous paragraph is likely to have evidentiary support
after a reasonable opportunity for further investigation or discovery.  This
allegation is based upon the following information: 1) Plaintiffs themselves
received such calls to their cellular telephones from multiple collection
agents of WELLS FARGO, indicating that Defendant did not scrub to
remove cellular telephone numbers; 2) the very purpose of automated dialers
is to call numerous persons in a short amount of time; and 3) the sheer size
and national scope of WELLS FARGO.

83.   There are questions of law and fact common to the class, which common

issues predominate over any issues involving only individual class members.

The principal issues are:

      a.   Whether WELLS FARGO's dialing system constitutes an

         automatic telephone dialing system under the TCPA and/or the

         FCC's rules;

      b.   Whether WELLS FARGO's unattended messages used an

         artificial or prerecorded voice under the TCPA and/or the

         FCC's rules; and

      c.   Whether the telephone calls were made knowingly or willfully.

84.   The claims of the Plaintiffs are typical of those of the class members.  All

are based on the same facts and legal theories.

85.   Plaintiffs will fairly and adequately protect the interests of the class.  They

have retained counsel experienced in handling TCPA robocall actions and

class actions.  Neither Plaintiffs nor their counsel have any interests which

might cause them not to vigorously pursue this action.

86.   Certification of the class under Rule 23(b)(2) of the Federal Rules of Civil

Procedure is appropriate in that the Defendant has acted on grounds that

apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

87. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

a. The questions of law or fact common to the members of the class predominate over any questions affecting an individual member

b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment will permit a large number of similarly situated persons to prosecute their common claims relating to Defendant's autodialed calls to their cellular telephones in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual lawsuits would entail. Absent a class action, many members of the class will likely not even obtain relief, whether because they are unaware of their right to relief from the harm caused by Defendant's illegal practices, due to the prohibitive time and monetary cost inherent in individual litigation, or otherwise.

88. Plaintiffs request certification of a hybrid class pursuant to Fed. R. Civ. P. 23(b)(2) and (3) for monetary damages and injunctive relief.

18

# CAUSE OF ACTION

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

89. The acts of Defendant constitute violations of the Telephone Consumer Protection Act.

90. Defendant's violations of the TCPA include, but are not limited to, the following:

> Making and/or initiating telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and 47 CFR § 64.1200(a)(1)(iii).

91. As a result of Defendant's actions, Plaintiffs and the members of the class are entitled to an award of actual damages or $500.00, whichever is greater, for each such violation and an injunction prohibiting future conduct in violation of the TCPA.

92. Defendant's violations were committed willfully and knowingly.

93. Plaintiffs, on behalf of themselves and the class, request that the Court treble damages pursuant to 47 U.S.C. § 227(b)(3).

94. Plaintiffs request, on behalf of themselves and the class, that Defendant be enjoined from future TCPA violations.

19

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of themselves and the class they seek to represent against Defendant, as follows:

A.    Certification of this matter to proceed as a class action;

B.    Damages pursuant to 47 U.S.C. § 227(b)(3)(B);

C.    Treble damages pursuant to 47 U.S.C. § 227(b)(3);

D.    Injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) preventing future conduct by the Defendant in violation of the TCPA;

E.    Costs of this Action pursuant to Fed. R. Civ. P. 54; and

F.    Such further and additional relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs herein demand a trial by jury on all issues so triable.

Respectfully submitted,

Dated:  June 29, 2016

SKAAR & FEAGLE, LLP

by: /s/ James M. Feagle
James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
404 / 373-1970
404 / 601-1855 fax

Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
Kris Skaar
Georgia Bar No. 649610
krisskaar@aol.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Jonathan D. Selbin (*pro hac vice* pending)
Email:  jselbin@lchb.com
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Daniel M. Hutchinson (*pro hac vice*
pending)
Email:  dhutchinson@lchb.com
275 Battery Street, 29th Floor
San Francisco, California  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Andrew R. Kaufman (*pro hac vice* pending)
Email: akaufman@lchb.com
150 Fourth Avenue North, Suite 1650
Nashville, TN 37219
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

BURKE LAW LLC

by: /s/ Alexander H. Burke
Alexander H. Burke (*pro hac vice*)
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

MEYER WILSON CO., LPA
Matthew R. Wilson (*pro hac vice* pending)
Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (*pro hac vice* pending)
Email:  mboyle@meyerwilson.com
1320 Dublin Road, Ste. 100
Columbus, OH  43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

LAW OFFICES OF DOUGLAS J.
CAMPION, APC
Douglas J. Campion
Email: doug@djcampion.com
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Facsimile:  (619) 858-0034

KEOGH LAW, LTD.
Keith Keogh
Email: keith@keoghlaw.com
55 W. Monroe, Ste. 3390
Chicago, Il. 60603
Telephone: 312-265-3258
Facsimile: 312-726-1093

GREENWALD DAVISON RADBIL PLLC
Michael L. Greenwald
Email:  mgreenwald@gdrlawfirm.com
5550 Glades Rd., Suite 500
Boca Raton, FL 33431
Telephone: (561) 826-5477
Facsimile: (561) 961-5684

Aaron D. Radbil
Email:  aradbil@gdrlawfirm.com
106 East Sixth Street, Suite 913
Austin, Texas 78701
Telephone: (512) 322-3912
Facsimile: (561) 961-5684

KAZAROUNI LAW GROUP, APC
Abbas Kazerounian
Email:  ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA  92626
Telephone:  (800) 400-6806
Facsimile:  (800) 520-5523

HYDE & SWIGART
Joshua B. Swigart, Esq.
josh@westcoastlitigation.com
2221 Camino del Rio South, Suite 101
San Diego, CA 92108
Telephone (619) 233-7770
Facsimile (619) 297-1022

*Attorneys for Plaintiffs Steven L. Markos,
Tiffany Davis, and Gregory Page, and the
Proposed Class*

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| STEVEN L. MARKOS, GREGORY PAGE, and TIFFANY DAVIS, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01156-LMM |
| Plaintiff, | CLASS ACTION |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## [PROPOSED] ORDER (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN, AND (4) SETTING FINAL APPROVAL HEARING

This matter having come before the Court on Plaintiffs' motion for preliminary approval of the proposed class action settlement of the above-captioned case (the "Action") between Plaintiffs Steven Markos, Gregory Page, and Tiffany Davis, individually and on behalf of the Settlement Class ("Plaintiffs"), and Defendant Wells Fargo Bank, N.A. ("Defendant") as set forth in the Parties' Settlement Agreement and Release (the "Agreement," which memorializes the "Settlement"). Having duly considered the papers, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:

1.      The Court has jurisdiction over the subject matter of the Litigation, the Parties, and all Settlement Class Members.

2.      Unless defined herein, all defined terms in this Order shall have the meanings ascribed to them in the Agreement.

3.      The Court has conducted a preliminary evaluation of the Settlement as set forth in the Agreement for fairness, adequacy, and reasonableness.  Based on this evaluation, the Court finds there is cause to believe that: (i) the Agreement is fair, reasonable, and adequate, and within the range of possible approval; (ii) the Agreement has been negotiated in good faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case; and (iii) with respect to the forms of notice of the material terms of the Agreement to Settlement Class Members for their consideration and reaction, that notice is appropriate and warranted.  Therefore, the Court grants preliminary approval of the Settlement.

4.      The Court, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, conditionally certifies, for purposes of this Settlement only, the following Settlement Class:

> All users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which Wells Fargo made or initiated one or more Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available

records, and who are within Subclass One and/or Two, which are defined as follows:

Subclass One consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Residential Mortgage Loan.

Subclass Two consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Home Equity Loan.

Excluded from the Settlement Class are Defendant and any affiliate or subsidiary of Defendant, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt out of the Settlement Class.

5.      The Court hereby appoints Plaintiffs as Class Representatives of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

6.      The Court appoints Lieff Cabraser Heimann & Bernstein, LLP and Burke Law Offices, LLC as co-lead Class Counsel, and Meyer Wilson Co., LPA; Skaar & Feagle, LLP, Greenwald Davidson Radbil PLLC; Keogh Law Ltd.; Kazerouni Law Group, APC; Law Offices of Douglas J. Campion, APC; and Hyde & Swigart as additional Class Counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

7.      On December 13, 2016, in courtroom 2107 of the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia, or at such other date and time later set by Court Order, this Court will

hold a Final Approval Hearing on the fairness, adequacy and reasonableness of the Agreement and to determine whether (i) final approval of the Settlement embodied by the Agreement should be granted, and (ii) Class Counsel's application for attorneys' fees and expenses, and incentive awards to Plaintiffs, should be granted, and in what amount.  No later than October 11, 2016, Plaintiffs must file papers in support of Class Counsel's application for attorneys' fees and expenses, and the incentive awards to the Class Representatives.  No later than November 29, 2016, which is fourteen (14) days prior to the Final Approval Hearing,  Plaintiffs must file papers in support of final approval of the Settlement and respond to any written objections.  Defendant may (but is not required to) file papers in support of final approval of the Settlement, so long as they do so no later than November 29, 2016.

8.  Pursuant to the Agreement, Garden City Group is hereby appointed as Claims Administrator and shall be required to perform all the duties of the Claims Administrator as set forth in the Agreement and this Order.

9.  The Court approves the proposed Notice Plan for giving notice to the Settlement Class (i) directly (using post cards), (ii) through publication and an online media campaign; (iii) through a toll-free telephone number; (iv) through a press release; and (v) by establishing a Settlement Website at the web address of www.MarkosWellsFargoTCPA.com, as more fully described in the Agreement. The Notice Plan, in form, method, and content, complies with the requirements of

Rule 23 and due process, and constitutes the best notice practicable under the circumstances. The Court hereby directs the Parties and the Claims Administrator to complete all aspects of the Notice Plan no later than September 9, 2016, in accordance with the terms of the Agreement.

10.    The Claims Administrator will file with the Court by no later than November 29, 2016, which is fourteen (14) days prior to the Final Approval Hearing, proof that Notice was provided in accordance with the Agreement and this Preliminary Approval Order, as well as proof that notice was provided to the appropriate State and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

11.    Settlement Class Members who wish to either object to the Settlement or request to be excluded from it must do so by the Objection Deadline and Opt-Out Deadline of November 8, 2016, which are both sixty (60) calendar days after the Settlement Notice Date. Settlement Class Members may not both object and opt out. If a Settlement Class Member submits both a Request for Exclusion and an objection, the Request for Exclusion will be controlling.

12.    To file a Request for Exclusion, Settlement Class Members must follow the directions in the Notice and send a compliant request to the Claims Administrator at the address designated in the Class Notice by the Opt-Out Deadline. In the Request for Exclusion, the Settlement Class Member must state

his or her full name, address, and cellular telephone number(s) at which the Settlement Class Member alleges he or she received a call from the Defendant, and must state in writing that he or she wishes to be excluded from the Settlement. No Request for Exclusion will be valid unless all of the information described above is included. No Settlement Class Member, or any person acting on behalf of or in concert or participation with that Settlement Class Member, may exclude any other Settlement Class Member from the Settlement Class, however nothing herein shall prevent Class Members from obtaining the assistance of another, such as a lawyer or family member, in preparing or submitting any individual exclusion.

13.     If a timely and valid Request for Exclusion is made by a member of the Settlement Class, then that person will not be a Settlement Class Member, and the Agreement and any determinations and judgments concerning it will not bind the excluded person.

14.     All Settlement Class Members who do not opt out in accordance with the terms set forth in the Agreement will be bound by all determinations and judgments concerning the Agreement.

15.     To object to the Settlement, Settlement Class Members must follow the directions in the Notice and file a written Objection with the Court by the Objection Deadline. In the written Objection, the Settlement Class Member must state his or her full name, address, and cellular telephone number(s) that the

Settlement Class Member alleges received a call from the Defendant.  He or she must also state the reasons for his or her Objection, and whether he or she intends to appear at the Fairness Hearing on his or her own behalf or through counsel.  Any documents that the Settlement Class Member wishes the Court to consider must also be attached to the Objection.  Any and all objections shall identify any lawyer that represents the Settlement Class Member as to the case or such objection.  No Objection will be valid unless all of the information described above is included.  Copies of all papers filed with the Court must be simultaneously delivered to Class Counsel and counsel for the Defendant.  The Parties will have the right to depose any objector to assess whether the objector has standing.

16.     If a Settlement Class Member does not submit a written comment on the proposed Settlement or the application of Class Counsel for attorneys' fees and expenses and the incentive awards in accordance with the deadline and procedure set forth in the Notice, and the Settlement Class Member wishes to appear and be heard at the Final Approval Hearing, the Settlement Class Member must file a notice of intention to appear with the Court and serve a copy upon Class Counsel and Defendant's Counsel no later than Objection/Opt-Out Deadline, and comply with all other requirements of the Court for such an appearance.

17.     Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final

Approval Hearing in accordance with the terms of this Order, above and as detailed in the Notice, and at the same time provide copies to Class Counsel and Defendant's Counsel, shall not be permitted to object to the Agreement at the Final Approval Hearing, shall be foreclosed from seeking any review of the Agreement by appeal or other means, shall be deemed to have waived his, her, or its objections, and shall be forever barred from making any such objections in the Action. All members of the Settlement Class, except those members of the Settlement Class who submit timely Requests for Exclusion, will be bound by all determinations and judgments in the Action, whether favorable or unfavorable to the Settlement Class.

18. Pending the final determination of whether the Settlement should be approved, all pre-trial proceedings and briefing schedules in the Action are stayed. If the Settlement is terminated or final approval does not for any reason occur, the stay will be immediately terminated.

19. If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings in connection with the Settlement will be without prejudice to the right of Defendant or the Settlement Class Representatives to assert any right or position that could have been asserted if the Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary. In such an event, the Parties will

return to the *status quo ante* in the Action and the certification of the Settlement

Class will be deemed vacated.  The certification of the Settlement Class for

settlement purposes will not be considered as a factor in connection with any

subsequent class certification decision.

20.     The Agreement and any and all negotiations, documents, and

discussions associated with it, will not be deemed or construed to be an admission

or evidence of any violation of any statute, law, rule, regulation, or principle of

common law or equity, or of any liability or wrongdoing, by Defendant, or the

truth of any of the claims, and evidence relating to the Agreement will not be

discoverable or used, directly or indirectly, in any way, whether in the Action or in

any other action or proceeding, except for purposes of demonstrating, describing,

implementing, or enforcing the terms and conditions of the Agreement, this Order,

and the Final Judgment and Order of Dismissal.

21.     Counsel are hereby authorized to use all reasonable procedures in

connection with approval and administration of the Settlement that are not

materially inconsistent with this Order or the Agreement, including making,

without further approval of the Court, minor changes to the form or content of the

Notice and Claim Form, and other exhibits that they jointly agree are reasonable

and necessary.  The Court reserves the right to approve the Agreement with such

modifications, if any, as may be agreed to by the Parties without further notice to the members of the Class.

22.     Accordingly, the following are the deadlines by which certain events must occur:

| September 9, 2016 [25 calendar days after the date of this order] | Deadline to Provide Class Notice |
|---|---|
| October 11, 2016 [30 days after the Settlement Notice Date, adjusted for the weekend] | Deadline for Plaintiffs' Motion for Attorneys' Fees and Incentive Awards |
| November 8, 2016 [60 days after the Settlement Notice Date] | Deadline for Class Members to file Objections or submit Requests for Exclusion |
| November 29, 2016 [14 days before the Final Approval Hearing] | Deadline for Parties to File the Following:<br>(1) List of Class Members who Made Timely and Proper Requests for Exclusion;<br>(2) Proof of Class Notice and CAFA Notice (to be filed by the Administrator); and<br>(3) Motion and Memorandum in Support of Final Approval, including responses to any Objections. |
| December 8, 2016 [90 days after the Settlement Notice Date] | Deadline for Settlement Class Members to Submit a Claim Form |
| December 13, 2016 at 9:00am | Final Approval Hearing |

SO ORDERED.

Dated:_August 15, 2016_____

Hon. Leigh Martin May
United States District Court Judge

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| STEVEN L. MARKOS, GREGORY PAGE, and TIFFANY DAVIS, on behalf of themselves and all others similarly situated, | Case No. 1:15-cv-01156-LMM |
| Plaintiff, | CLASS ACTION |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

## AMENDED ORDER  (1) CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, (2) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, (3) APPROVING NOTICE PLAN, AND (4) SETTING FINAL APPROVAL HEARING

This matter having come before the Court on Plaintiffs' motion for preliminary approval of the proposed class action settlement of the above-captioned case (the "Action") between Plaintiffs Steven Markos, Gregory Page, and Tiffany Davis, individually and on behalf of the Settlement Class ("Plaintiffs"), and Defendant Wells Fargo Bank, N.A. ("Defendant") as set forth in the Parties' Settlement Agreement and Release (the "Agreement," which memorializes the "Settlement").  Having duly considered the papers, THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:

1.  The Court has jurisdiction over the subject matter of the Litigation, the Parties, and all Settlement Class Members.

2.  Unless defined herein, all defined terms in this Order shall have the meanings ascribed to them in the Agreement.

3.  The Court has conducted a preliminary evaluation of the Settlement as set forth in the Agreement for fairness, adequacy, and reasonableness.  Based on this evaluation, the Court finds there is cause to believe that: (i) the Agreement is fair, reasonable, and adequate, and within the range of possible approval; (ii) the Agreement has been negotiated in good faith at arms-length between experienced attorneys familiar with the legal and factual issues of this case; and (iii) with respect to the forms of notice of the material terms of the Agreement to Settlement Class Members for their consideration and reaction, that notice is appropriate and warranted.  Therefore, the Court grants preliminary approval of the Settlement.

4.  The Court, pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, conditionally certifies, for purposes of this Settlement only, the following Settlement Class:

> All users or subscribers to a wireless or cellular service within the United States who used or subscribed to a phone number to which Wells Fargo made or initiated one or more Calls during the Class Period using any automated dialing technology or artificial or prerecorded voice technology, according to Wells Fargo's available

records, and who are within Subclass One and/or Two, which are defined as follows:

Subclass One consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Residential Mortgage Loan.

Subclass Two consists of persons who used or subscribed to a cellular phone number to which Wells Fargo made or initiated a Call or Calls in connection with a Home Equity Loan.

Excluded from the Settlement Class are Defendant and any affiliate or subsidiary of Defendant, and any entities in which any of such companies have a controlling interest, as well as all persons who validly opt out of the Settlement Class.

5.      The Court hereby appoints Plaintiffs as Class Representatives of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

6.      The Court appoints Lieff Cabraser Heimann & Bernstein, LLP and Burke Law Offices, LLC as co-lead Class Counsel, and Meyer Wilson Co., LPA; Skaar & Feagle, LLP, Greenwald Davidson Radbil PLLC; Keogh Law Ltd.; Kazerouni Law Group, APC; Law Offices of Douglas J. Campion, APC; and Hyde & Swigart as additional Class Counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

7.      On January 17, 2017, at 9:00 a.m. in courtroom 2107 of the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia, or at such other date and time later set by Court Order, this

Court will hold a Final Approval Hearing on the fairness, adequacy and reasonableness of the Agreement and to determine whether (i) final approval of the Settlement embodied by the Agreement should be granted, and (ii) Class Counsel's application for attorneys' fees and expenses, and incentive awards to Plaintiffs, should be granted, and in what amount.  No later than October 25, 2016, Plaintiffs must file papers in support of Class Counsel's application for attorneys' fees and expenses, and the incentive awards to the Class Representatives.  No later than December 13, 2016, which is at least fourteen (14) days prior to the Final Approval Hearing, Plaintiffs must file papers in support of final approval of the Settlement and respond to any written objections.  Defendant may (but is not required to) file papers in support of final approval of the Settlement, so long as they do so no later than December 13, 2016.

8.      Pursuant to the Agreement, Garden City Group is hereby appointed as Claims Administrator and shall be required to perform all the duties of the Claims Administrator as set forth in the Agreement and this Order.

9.      The Court approves the proposed Notice Plan for giving notice to the Settlement Class (i) directly (using post cards), (ii) through publication and an online media campaign; (iii) through a toll-free telephone number; (iv) through a press release; and (v) by establishing a Settlement Website at the web address of www.MarkosWellsFargoTCPA.com, as more fully described in the Agreement.

The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances.  The Court hereby directs the Parties and the Claims Administrator to complete all aspects of the Notice Plan no later than September 23, 2016, in accordance with the terms of the Agreement.

10.     The Claims Administrator will file with the Court by no later than December 13, 2016, which is at least fourteen (14) days prior to the Final Approval Hearing, proof that Notice was provided in accordance with the Agreement and this Preliminary Approval Order, as well as proof that notice was provided to the appropriate State and federal officials pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.

11.     Settlement Class Members who wish to either object to the Settlement or request to be excluded from it must do so by the Objection Deadline and Opt-Out Deadline of November 22, 2016, which are both sixty (60) calendar days after the Settlement Notice Date. Settlement Class Members may not both object and opt out.  If a Settlement Class Member submits both a Request for Exclusion and an objection, the Request for Exclusion will be controlling.

12.     To file a Request for Exclusion, Settlement Class Members must follow the directions in the Notice and send a compliant request to the Claims Administrator at the address designated in the Class Notice by the Opt-Out

Deadline.  In the Request for Exclusion, the Settlement Class Member must state his or her full name, address, and cellular telephone number(s) at which the Settlement Class Member alleges he or she received a call from the Defendant, and must state in writing that he or she wishes to be excluded from the Settlement.  No Request for Exclusion will be valid unless all of the information described above is included.  No Settlement Class Member, or any person acting on behalf of or in concert or participation with that Settlement Class Member, may exclude any other Settlement Class Member from the Settlement Class, however nothing herein shall prevent Class Members from obtaining the assistance of another, such as a lawyer or family member, in preparing or submitting any individual exclusion.

13.     If a timely and valid Request for Exclusion is made by a member of the Settlement Class, then that person will not be a Settlement Class Member, and the Agreement and any determinations and judgments concerning it will not bind the excluded person.

14.     All Settlement Class Members who do not opt out in accordance with the terms set forth in the Agreement will be bound by all determinations and judgments concerning the Agreement.

15.     To object to the Settlement, Settlement Class Members must follow the directions in the Notice and file a written Objection with the Court by the Objection Deadline.  In the written Objection, the Settlement Class Member must

state his or her full name, address, and cellular telephone number(s) that the Settlement Class Member alleges received a call from the Defendant.  He or she must also state the reasons for his or her Objection, and whether he or she intends to appear at the Fairness Hearing on his or her own behalf or through counsel.  Any documents that the Settlement Class Member wishes the Court to consider must also be attached to the Objection.  Any and all objections shall identify any lawyer that represents the Settlement Class Member as to the case or such objection.  No Objection will be valid unless all of the information described above is included.  Copies of all papers filed with the Court must be simultaneously delivered to Class Counsel and counsel for the Defendant.  The Parties will have the right to depose any objector to assess whether the objector has standing.

16.     If a Settlement Class Member does not submit a written comment on the proposed Settlement or the application of Class Counsel for attorneys' fees and expenses and the incentive awards in accordance with the deadline and procedure set forth in the Notice, and the Settlement Class Member wishes to appear and be heard at the Final Approval Hearing, the Settlement Class Member must file a notice of intention to appear with the Court and serve a copy upon Class Counsel and Defendant's Counsel no later than Objection/Opt-Out Deadline, and comply with all other requirements of the Court for such an appearance.

17.     Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Order, above and as detailed in the Notice, and at the same time provide copies to Class Counsel and Defendant's Counsel, shall not be permitted to object to the Agreement at the Final Approval Hearing, shall be foreclosed from seeking any review of the Agreement by appeal or other means, shall be deemed to have waived his, her, or its objections, and shall be forever barred from making any such objections in the Action.  All members of the Settlement Class, except those members of the Settlement Class who submit timely Requests for Exclusion, will be bound by all determinations and judgments in the Action, whether favorable or unfavorable to the Settlement Class.

18.     Pending the final determination of whether the Settlement should be approved, all pre-trial proceedings and briefing schedules in the Action are stayed. If the Settlement is terminated or final approval does not for any reason occur, the stay will be immediately terminated.

19.     If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings in connection with the Settlement will be without prejudice to the right of Defendant or the Settlement Class Representatives to assert any right or position that could have been asserted if the

Agreement had never been reached or proposed to the Court, except insofar as the Agreement expressly provides to the contrary.  In such an event, the Parties will return to the *status quo ante* in the Action and the certification of the Settlement Class will be deemed vacated.  The certification of the Settlement Class for settlement purposes will not be considered as a factor in connection with any subsequent class certification decision.

20.    The Agreement and any and all negotiations, documents, and discussions associated with it, will not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, regulation, or principle of common law or equity, or of any liability or wrongdoing, by Defendant, or the truth of any of the claims, and evidence relating to the Agreement will not be discoverable or used, directly or indirectly, in any way, whether in the Action or in any other action or proceeding, except for purposes of demonstrating, describing, implementing, or enforcing the terms and conditions of the Agreement, this Order, and the Final Judgment and Order of Dismissal.

21.    Counsel are hereby authorized to use all reasonable procedures in connection with approval and administration of the Settlement that are not materially inconsistent with this Order or the Agreement, including making, without further approval of the Court, minor changes to the form or content of the Notice and Claim Form, and other exhibits that they jointly agree are reasonable

and necessary.  The Court reserves the right to approve the Agreement with such

modifications, if any, as may be agreed to by the Parties without further notice to

the members of the Class.

      22.     Accordingly, the following are the deadlines by which certain events

must occur:

| | |
|---|---|
| September 23, 2016 | Deadline to Provide Class Notice |
| October 25, 2016 [30 days after the Settlement Notice Date, adjusted for the weekend] | Deadline for Plaintiffs' Motion for Attorneys' Fees and Incentive Awards |
| November 22, 2016 [60 days after the Settlement Notice Date] | Deadline for Class Members to file Objections or submit Requests for Exclusion |
| December 13, 2016 [at least 14 days before the Final Approval Hearing] | Deadline for Parties to File the Following:<br>(1) List of Class Members who Made Timely and Proper Requests for Exclusion;<br>(2) Proof of Class Notice and CAFA Notice (to be filed by the Administrator); and<br>(3) Motion and Memorandum in Support of Final Approval, including responses to any Objections. |
| December 22, 2016 [90 days after the Settlement Notice Date] | Deadline for Settlement Class Members to Submit a Claim Form |
| January 17, 2017 at 9:00am | Final Approval Hearing |

SO ORDERED.


Dated:  September 7 , 2016


LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

# Exhibit 5

**Lewis G. Adler, Esq.**
**26 Newton Avenue**
**Woodbury, NJ 08096**
**(856) 845-1968 voice**
**(856) 848-9504 fax**
lewisadler@verizon.net
October 7, 2016


Markos Wells Fargo TCPA
Settlement Claims Administrator
c/o GCG
PO Box 10301
Dublin, OH 43017-5901

RE: Markos v. Wells Fargo
    15-cv-1156 LMM (N. D. Ga)

Dear Sir/Madam:

    Please be advised that I request to be excluded from
the class in this lawsuit. My information is as follows:

    Lewis G. Adler
    215 Douglas Avenue
    Haddonfield, NJ 08033
    (856)906-5877
    WF10411865687
    Claim ID 03727891
    Confirmation no. 3131212323


    Thank you for your attention


    Lewis G. Adler, Esquire

Regular and Certified Mail